**Case No. 21-16528**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

ARMIDA RUELAS; DE'ANDRE EUGENE COX; BERT DAVIS;
KATRISH JONES; JOSEPH MEBRAHTU; DAHRYL REYNOLDS;
MONICA MASON; LUIS NUNEZ-ROMERO; SCOTT ABBEY,
AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Respondents*,

v.

COUNTY OF ALAMEDA; SHERIFF GREGORY J. AHERN;
ARAMARK CORRECTIONAL SERVICES, LLC
*Defendants-Appellants*.

On Appeal from the United States District Court
Northern District of California, Case No. 4:19-cv-07637-JST
Hon. Jon S. Tigar

**RESPONDENTS' ANSWERING BRIEF**

<div style="margin-left:40%">

Dan Siegel, Cal. SBN 054600
EmilyRose Johns, Cal. SBN 294319
Siegel, Yee, Brunner & Mehta
475 14th Street, Suite 500
Oakland, CA 94612
(510) 839-1200

*Attorneys for Respondents*
Armida Ruelas, et al.

</div>

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... v

INTRODUCTION ................................................................................... 1

JURISDICTIONAL STATEMENT .......................................................... 2

STATUTORY AUTHORITIES ................................................................ 2

STATEMENT OF THE CASE ................................................................. 2

SUMMARY OF THE ARGUMENT ......................................................... 4

ARGUMENT ......................................................................................... 4

    I.    The California Labor Code applies to non-convicted detained individuals performing services in county jails for a for-profit company that sells goods produced by incarcerated individuals to third parties outside of the county .......................................................... 6

        A.    The California Labor Code applies generally to non-convicted individuals incarcerated in county jails who perform services for a for-profit company that sells goods produced by incarcerated individuals to third parties outside of the county ... 7

            1.    Payment of minimum and overtime wages to non-convicted detainees would advance the policies underlying the California Labor Code's minimum and overtime wage provisions. .............................................. 9

            2.    The Court should not adopt the reasoning of federal courts interpreting the Federal Labor Standards Act, because this case is governed by California, not federal law. ............................................................... 12

        B.    The District Court correctly ruled that other state laws do not preclude application of the California Labor Code to non-

convicted individuals incarcerated in county jails who perform services for a for-profit company that sells the goods produced by them to third parties outside of the county. ........................15

1. Penal Code section 4019.3 does not preclude application of the California Labor Code to the individuals at issue in this case, because the provision sets forth a permissive, non-exclusive, procedure. .............................................16

2. Penal Code section 4019.3 does not preclude application of the California Labor Code to the individuals at issue in this case, because Penal Code 4019.3 does not apply to them...............................................................................18

i. The text of Penal Code section 4019.3 makes clear that the statute does not apply to private-public work programs. ...................................................18

ii. The statutory context of Penal Code section 4019.3 makes clear that the statute does not apply to private-public work programs.............................19

iii. The legislative background of Penal Code section 4019.3 makes clear that statute does not apply to private-public work programs.............................20

C. Proposition 139 does not preclude application of the California Labor Code to non-convicted incarcerated individuals performing services in county jails for a for-profit company that sells goods produced by incarcerated individuals to third parties outside of the county. ............................................................22

1. The policies and legislative intent undergirding Proposition 139 would be advanced by the payment of wages to the individuals at issue in this case. ................23

2. The absence of a local ordinance does not foreclose the application of the Labor Code to the individuals at issue. .......................................................................26

CONCLUSION ....................................................27

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adams v. Neubauer*,
 195 F. App'x 711 (10th Cir. 2006) ................................................................. 9

*Barker v. Wingo*,
 407 U.S. 514 (1972).......................................................................................... 11

*Burleson v. California*,
 83 F.3d 311 (9th Cir. 1996) ...................................................................... 13, 14

*Leyva v. Medline Industries Inc.*
 716 F.3d 510 (9th Cir. 2013) ............................................................................ 7

*Lowe v. S.E.C.*,
 472 U.S. 181 (1985)........................................................................................... 18

*McGarry v. Pallito*,
 687 F.3d 505 (2d Cir. 2012)............................................................................. 9

*Ochoa v. McDonald's Corp.*,
 133 F. Supp. 3d 1228 (N.D. Cal. 2015) ......................................................... 8

*Owino v. CoreCivic, Inc.*,
 2018 WL 2194644, at *1 (S.D. Cal. May 14, 2018)...................................... 13

*Vanskike v. Peters*,
 974 F.2d 806 (7th Cir. 1992) ............................................................................ 9

*Villareal v. Woodham*,
 113 F.3d 202 (11th Cir. 1997) ......................................................................... 13

**STATE CASES**

*Alvarado v. Dart Container Corp. of California*,
 4 Cal.5th 542 (2018) ........................................................................................... 7

*Anderson v. Sherman*,
 125 Cal. App. 3d 228 (Ct. App. 1981)................................................... 16, 17

*Cohn v. Isensee*,
 45 Cal. App. 531 (Cal. Ct. App. 1920) ......................................................... 16

*In re Humphrey*,
 19 Cal.App.5th 1006 (2018) ........................................................................... 11

*In re Marquez,*
    3 Cal. 2d 625 (1935) ........................................................................... 19

*Kerr's Catering Serv. v. Dep't of Indus. Rels.,*
    57 Cal. 2d 319 (1962) ......................................................................... 10

*Martinez v. Combs,*
    49 Cal. 4th 35 (2010) ...................................................................... 4, 10

**STATUTES**

1990 Cal. Legis. Serv. Prop 139 ............................................................. 21, 22

Cal. Lab. Code § 1720 ................................................................................... 21

Cal. Lab. Code § 6304.2 .................................................................................. 8

Cal. Lab. Code §3370 ...................................................................................... 8

Cal. Pen. Code § 4019.3............................................................................ 15, 18

Cal. Penal Code § 2717.8............................................................................ 6, 24

Cal. Penal Code § 4017............................................................................... 20, 21

Cal. Penal Code § 4018..................................................................................... 20

Stats. 1913, ch. 324, § 3, subd. (a) ................................................................ 10

**OTHER AUTHORITIES**

Analysis of Senate Bill 1394 (June 10, 1959) (from the Hugo Fisher Papers, 1958-1962, UCLA
    Library, Department of Special Collections) ........................................... 16, 21

Felix Frankfurter,
    *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 539 (1947).......... 20

Mark Pogrebin, Mary Dodge & Paul Katsampes,
    *The Collateral Costs of Short-Term Jail Incarceration: The Long-Term Social and
    Economic Disruptions*, Corr. Mgmt. Q., Fall 2001, at 64, 64-65 .................................... 12

*Reimagining a Prosecutor's Role in Sentencing*,
    32 Fed.Sent.R. 195, 195, 2020 WL 3163370 (Vera Inst.Just.)........................................ 12

Shima Baradaran Baughman,
    *Costs of Pretrial Detention*, 97 B.U. L. Rev. 1, 5 (2017) ................................................. 11

Thomas Bak,
  *Pretrial Release Behavior of Defendants Whom the U. S. Attorney Wished to Detain*, 30
  AM. J. CRIM. L. 45, 64-65 (2002) ..................................................................................... 11

Thomas M. Cooley,
  *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of
  the States of the American Union* 58 (1868) ...................................................................... 19

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. XIII ........................................................................................................... 9

## INTRODUCTION

Congress and the states passed the Thirteenth Amendment to the United States Constitution in 1865 to end the scourge of slavery and abolish the practice of involuntary servitude, with one exception, the punishment of persons convicted of crimes. No-one else may be required to work without compensation. A myriad of state and federal statutes regulates the manner and amount of payments to individuals for their labor.

This case challenges the actions of the Alameda County Sheriff and its business partner, Aramark Correctional Services, LLC, to utilize unpaid, non-convicted state and federal pretrial detainees and those on immigration holds to perform labor on Aramark's for-profit meal preparation services. This appeal determines only whether certain provisions of the California Labor Code apply to plaintiffs and the class they seek to represent. The District Court properly concluded that the Labor Code, which includes no exception for pretrial detainees or those facing deportation, and encompasses all persons who work for private companies, applies here.

Appellants County of Alameda and Aramark argue that the Labor Code's wage provisions are inapplicable because they are in conflict with a later-enacted law that deals with a different issue. Appellants wrongly claim that California Proposition 139, which made it possible for jails to contract with private

companies to provide detainee labor, requires the enactment of local ordinances to govern detainee work, and that the Labor Code cannot apply in the absence of such an ordinance. The District Court ruled that Proposition 139 does not apply to this case and does not prevent the application of other statutes relevant to plaintiffs' claims. Appellants also argue that paying those non-convicted people who produce goods and services for a large corporation and receive no wages in return would offend the purposes and policies of laws enacted to advance a more just and less exploitative society. This argument defies logic.

This appeal should be rejected.

## JURISDICTIONAL STATEMENT

Respondents agree with Appellants' statements of jurisdiction.

## STATEMENT OF THE CASE

Appellant Aramark uses the labor of non-convicted detainees in Santa Rita jail to produce food products that are it sells to third parties outside of Alameda County. 1-ER-024. This is made possible by a contractual relationship between Aramark and appellant the County of Alameda, which owns and operates Santa Rita jail. Aramark employees direct and supervise the work of detained Santa Rita jail laborers, set their shifts, and report any perceived misconduct to jail deputies for discipline. Both Aramark and the County of Alameda enjoy financial benefits from this contractual relationship. 3-ER-175. Aramark received $19,097,148 under

its food services contract with the County of Alameda for a roughly three-year period between 2015 and 2018, and the County receives a direct benefit in the form of commissions. 3-ER-175; Aramark's Opening Brief ("AOB") 45. The detainees whose labor is monetized by appellants, however, do not receive the minimum and overtime wages provided for workers under the California Labor Code or, indeed, any wages at all.

Respondents Armida Ruelas, De'Andre Eugene Cox, Bert Davis, Katrish Jones, Joseph Mebrahtu, Dahryl Reynolds, Monica Mason, Luis Nunez-Romero, and Scott Abbey were non-convicted individuals who worked for Aramark while detained in Santa Rita jail and did not receive wages. 2-ER-284. Their work involved preparing and packaging food in an industrial kitchen at Santa Rita jail and cleaning and sanitizing the kitchen after food preparation was completed. 2-ER-284. Plaintiffs sued Aramark and the County of Alameda in 2020 for wages provided by the minimum and overtime wage provisions of the California Labor Code. 2-ER-296. Appellant-defendants filed motions to dismiss. 2-ER-300. The district court denied defendants' motions to dismiss plaintiffs' California Labor Code claims, finding that "in the absence of regulation from the Penal Code or any relevant local ordinance . . . non-convicted detainees working for a private company that sells the goods produced by Plaintiffs to third parties outside of Alameda County . . . are entitled to the protections of the Labor Code." 1-ER-024.

3

Appellants moved the district court for an order certifying for immediate interlocutory appeal. The district court granted the motion and certified the following question:

> "Do non-convicted incarcerated individuals performing services in county jails for a for-profit company that sells goods produced by incarcerated individuals to third parties outside of the county have a claim for minimum wages and overtime under Section 1194 of the California Labor Code in the absence of any local ordinance prescribing or prohibiting the payment of wages for these individuals?" 1-ER-042.

## SUMMARY OF THE ARGUMENT

The text and policies of the California Labor Code support its application to non-convicted incarcerated individuals performing services in county jails for a for-profit company that sells the goods produced by that labor to parties outside of the county, and the state and federal laws cited by Appellants—including California Penal Code section 4019.3, the Fair Labor Standards Act, and the state laws enacted pursuant to Proposition 139—do not preclude its application.

First, it is clear that the Labor Code's general provisions embrace non-convicted detainees working for private companies. The California Labor Code was enacted to protect workers, and the purpose underlying the wage provisions of the Labor Code, that is, the purpose to provide for the general welfare of workers, is advanced by paying non-convicted workers. *Martinez v. Combs*, 49 Cal. 4th 35, 54 (2010). Furthermore, as the district court found, detainees working for Aramark

4

have an employment relationship with Aramark under this state's employment laws. 1-ER-026. The district court was also correct in finding that the Federal Labor Standards Act's definition of employment and case law interpreting the Federal Labor Standards Act are inapplicable here, because this case is governed by California labor law, not federal labor law, and the cases cited by appellant are not analogous to this one.

Second, the district court correctly ruled that other state laws, including California Penal Code section 4019.3 and Proposition 139, do not preclude application of the California Labor Code to the individuals at issue here. Penal Code section 4019.3 sets forth a permissive, non-exclusive, procedure regarding payment of jail detainees working in public work programs. This provision does not apply to private-public work programs, which is made clear by the provision's full text, its statutory context, and its legislative background.

Proposition 139, likewise, does not apply to the individuals at issue here. However, the interests at the heart of Proposition 139—including compensating state prisoners for their work, ensuring that working inmates do not replace striking, non-incarcerated workers, providing support for inmates' families during incarceration, mitigating the costs of incarceration, and compensating victims— would be advanced, not undermined, by the payment of wages to non-convicted detainees working in private-public programs. 3-ER-503–504. Proposition 139

neither makes mention of non-convicted detained individuals, nor does it address wages for those individuals who are detained in a jail that is not governed by a local ordinance. It does, however, explicitly provide payment "comparable to wages paid . . . non-inmate employees" to state prisoners. Cal. Penal Code § 2717.8. Since voters intended that this narrow sector of prisoners who can be forced to labor without wages to be paid under Proposition 139, it follows that they support the payment of wages to non-convicted detainees, who cannot, consistent with the Thirteenth Amendment, be forced into involuntary servitude.

Appellants incorrectly argue that an absence of a local ordinance forecloses the application of the Labor Code here. Proposition 139 neither makes mention of non-convicted detained individuals, nor does it address wages for those individuals who are detained in a jail that is not governed by a local ordinance. Aramark cannot hide behind a tapestry of inapplicable laws to shield itself from its obligation to pay its detained workers.

## ARGUMENT

**I.** **The California Labor Code applies to non-convicted detained individuals performing services in county jails for a for-profit company that sells goods produced by incarcerated individuals to third parties outside of the county.**

Appellants dedicate much of their briefs to outlining a web of disparate laws that they argue thwart the application of the California Labor Code to the class of individuals at issue here. But appellants all but ignore the text and policies of the

California Labor Code, the body of law at the heart of this appeal. Both the text and policies of the California Labor Code support its application to non-convicted incarcerated individuals performing services in county jails for a for-profit company that sells the goods produced by that labor to parties outside of the county, and the state and federal laws cited by Appellants—including California Penal Code section 4019.3, the Fair Labor Standards Act, and the state laws enacted pursuant to Proposition 139—do not preclude its application in any way.

**A. The California Labor Code applies generally to non-convicted individuals incarcerated in county jails who perform services for a for-profit company that sells goods produced by incarcerated individuals to third parties outside of the county.**

Appellants argue that the district court erred in finding that the California Labor Code applies generally to the individuals at issue here. The California Labor Code was enacted to protect workers and is to be liberally construed in favor of worker protection. *Leyva v. Medline Industries Inc.* 716 F.3d 510, 515 (9th Cir. 2013) ("The California Labor Code protects all workers"); *Alvarado v. Dart Container Corp. of California*, 4 Cal.5th 542, 561–562 (2018) ("The state's labor laws are to be liberally construed in favor of worker protection.").

Appellants assert that "the Labor Code applies to inmate work only when it does so expressly and only in narrow circumstances," but they fail to provide any authority or other support for that conclusion. County of Alameda's Opening Brief ("COB") 25. Appellants' only attempt to support that argument is their reference to

7

two provisions of the Labor Code, sections 3370 and 6304.2, that explicitly reference state inmates (not county prisoners) but are otherwise completely unrelated to the issues on appeal here. *Id*; Cal. Lab. Code § 3370, Cal. Lab. Code § 6304.2.

First, it is clear that the Labor Code's general provisions embrace non-convicted detainees working for private companies. The district court found that the non-convicted detainees working for Aramark have an employment relationship with Aramark under this state's employment laws, as the detainees in this case, detainees, are "suffer[ed] or permit[ted] to work." 1-ER-026.

> In Martinez, the California Supreme Court held that the Industrial Welfare Commission's ("IWC") wage orders define an "employer" as a person who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person, (citation omitted.) Pursuant to the IWC, "employ" is defined to mean "to engage, suffer, or permit to work." *Id.* at 57 (quoting Wage Order No. 14). 'To employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship.' Any of the three is sufficient to create an employment relationship." *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015). 1-ER-025–026.

It makes sense for the Legislature to explicitly provide for worker benefits and protections to convicted state inmates in Labor Code sections 3370 and 6304.2 and to choose not to do the same for non-convicted prisoners. Convicted prisoners, unlike non-convicted prisoners, are not explicitly or implicitly embraced by the

8

Labor Code's protections. Convicted prisoners may be required under the Thirteenth Amendment to submit to involuntary servitude and are thus not necessarily protected by the California Labor Code, which was enacted, in part, to prevent such exploitation. U.S. Const. Amend. XIII; *Adams v. Neubauer*, 195 F. App'x 711, 713 (10th Cir. 2006); *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992). It was necessary for the state Legislature to enact provisions of the Labor Code to create exceptions to the Thirteenth Amendment's allowance of involuntary servitude for convicted prisoners if it wished to provide for their compensation. Non-convicted prisoners, on the other hand, do not fall within the ambit of the Thirteenth Amendment's exception and are not, for this reason, excluded from the Labor Code's protections. *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012).

> ### 1. Payment of minimum and overtime wages to non-convicted detainees would advance the policies underlying the California Labor Code's minimum and overtime wage provisions.

Appellants argue that "the policies underlying the Labor Code's minimum and overtime wage provisions are diminished in the context of inmate labor." AOB 46.

The California Legislature passed the state's first minimum wage law in 1913. The Labor Code initially granted the Industrial Welfare Commission the power to enact a "minimum wage to be paid to women and minors engaged in any occupation, trade, or industry in the State, which shall not be less than a wage

adequate to supply the necessary costs of proper living to, and maintain the health and welfare of . . . women and minors." Stats. 1913, ch. 324, § 3, subd. (a), p. 633; *Martinez*, 49 Cal. 4th at 54; *Kerr's Catering Serv. v. Dep't of Indus. Rels.*, 57 Cal. 2d 319 (1962).

The purpose of the law was to protect the workers with the least bargaining power at the time, women and children, from wage exploitation by more powerful industry and to protect society from the injurious effects of such exploitation. *Martinez*, 49 Cal. 4th at 54 . Aramark and the Sheriff, invoking cases construing federal minimum wage laws, assert that inmates have no need for wages that maintain their health and welfare and supply the necessary cost of living, which were at the core of the Legislature's purpose in setting minimum wages. AOB 46–47. Appellants go on to reason that "the inapplicability of the Labor Code's minimum wage provisions also renders its overtime provisions inapt, since employers who need not pay minimum wages are necessarily not as susceptible to the "financial pressure" of a time-and-a-half overtime rate. AOB 47. Appellants are wrong.

Detention imposes direct economic costs on non-convicted detainees, which can be alleviated by the payment of wages for the labor they undertake during their detention. Their detention can result in the loss of paid employment and property. Thomas Bak, *Pretrial Release Behavior of Defendants Whom the U. S. Attorney*

*Wished to Detain*, 30 AM. J. CRIM. L. 45, 64-65 (2002). Non-convicted detainees who lose employment as a result of their detention will likely encounter reduced wages if they can find new employment when they are released, as serving time generally reduces earning power. Shima Baradaran Baughman, *Costs of Pretrial Detention*, 97 B.U. L. Rev. 1, 5 (2017). Some of these detainees have families who depend on them for financial support and suffer economically when the detainee is no longer receiving wages. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S. Ct. 2182, 2187, 33 L. Ed. 2d 101 (1972). Many households with a family member in jail "struggle to meet their most essential needs." *In re Humphrey*, 19 Cal.App.5th 1006, 1032 (2018). The expenses associated with incarceration or jail time, such as phone, commissary, and travel costs, can push families who were living above the poverty line before becoming involved with the criminal justice system into penury. *Id.*

These financial losses may result in detainees' families and dependents becoming dependent on the state for support or, upon release, detainees themselves. Pretrial detention may also result in indirect costs to society. For example, because detention of non-convicted individuals often deprives detainees' children of financial support, these children may be more likely to drop out of school and eventually find themselves in state or county custody. *Reimagining a Prosecutor's Role in Sentencing*, 32 Fed.Sent.R. 195, 195, 2020 WL 3163370

11

(Vera Inst.Just.). Cost shifting is further enhanced by the fact that that these children are more likely to receive public assistance. Mark Pogrebin, Mary Dodge & Paul Katsampes, *The Collateral Costs of Short-Term Jail Incarceration: The Long-Term Social and Economic Disruptions*, Corr. Mgmt. Q., Fall 2001, at 64, 64-65.

Paying prevailing wages to non-convicted inmates thus provides them with the means to maintain their own and their families' health and welfare during their detention, but also to ensure that they and their dependents do not become dependent on the state after their release.

> **2.    The Court should not adopt the reasoning of federal courts interpreting the Federal Labor Standards Act, because this case is governed by California, not federal law.**

Appellants ask this Court to adopt the reasoning of federal courts interpreting the Fair Labor Standards Act's (FLSA) definition of employment to find that the California Labor Code cannot apply to plaintiffs because their relationship to the jail is "penological, not pecuniary." COB 49. The District Court declined to do so, and appellants fail to repair the logical gaps that the Court identified in their argument.

First, as the district court noted, "cases involving claims under the FLSA do not determine the outcome here because . . . this case is governed by California labor law rather than federal labor law." *See Owino v. CoreCivic*, *Inc.*, 2018 WL

2194644, at \*24 (S.D. Cal. May 14, 2018). ("The defect in Defendant's argument is that California's employment definition is explicitly different from FLSA's economic reality test. The California Supreme Court cannot be much clearer when it said '[i]n no sense is the IWC's definition of the term 'employ' based on federal law.'") (citations omitted.)

Second, the district court correctly rejected appellants' argument that cases interpreting the FLSA, namely *Villareal v. Woodham*, 113 F.3d 202 (11th Cir. 1997)*, were determinative or even persuasive in this case, noting that the FLSA did not apply in *Villareal*, because "'the labor produce[d] goods and services utilized by the prison,'" while, here, "Aramark, a private party sells the goods that inmates produce to third parties outside of Alameda County." 1-ER-023.

Appellants now rely on another case, *Burleson v. California*, 83 F.3d 311 (9th Cir. 1996), to argue that the district court erred "by focusing on the economic benefits Appellees' work provides Aramark." COB 52. "In [*Burleson*], the plaintiffs performed work producing goods and services that were sold for a profit outside the prison…[and] [t]his court held the plaintiffs were not employees, applying *Hale* and rejecting the plaintiffs' arguments that their profit-generating activities were relevant to their legal status." COB 51-52. Appellants misstate the case. In *Burleson*, plaintiffs worked for the Prison Industrial Authority (PIA), which profited from the plaintiffs' labor. The court there found that the "PIA's

status as part of California's correctional system clearly brings it within ambit of 'prison-structured programs[]'" and, therefore, prisoners working for the PIA are not employees entitled to minimum wage under FLSA. *Burleson*, 83 F.3d at 314 (9th Cir. 1996).

In this case, plaintiffs work for Aramark, a third-party for-profit company that is not a part of the California correctional system. The employers in *Burleson* and in the present case, therefore, are not analogous. While the court in *Burleson* did indeed note that "the fact that California, through the PIA, attempts to generate a profit from plaintiffs' labor does not affect the economic reality that their labor 'belongs' to the state," the court clearly relies on the fact that the employer, the PIA, is part of the California correctional system rather than a for-profit private institution. *Burleson*, 83 F.3d at 314–15. The *Burleson* court quotes the Seventh Circuit in its reasoning on this point. "A governmental advantage from the use of prisoner labor is not the same as a similar low-wage advantage on the part of a private entity." *Id.* at 314. A close reading of *Burleson* shows that the appellants here have built their argument that the federal FLSA should govern on a false foundation; *Burleson* not only contravenes their argument but also supports appellees' assertion that under California law non-convicted inmates providing services for a for-profit private company should be treated as workers in an employment relationship with that for-profit entity.

**B.     The District Court correctly ruled that other state laws do not preclude application of the California Labor Code to non-convicted individuals incarcerated in county jails who perform services for a for-profit company that sells the goods produced by them to third parties outside of the county.**

Appellants focus their argument on the notion that California Penal Code section 4019.3 applies to the individuals at issue in this case, and, because it conflicts with the wage provisions of the Labor Code, the Labor Code cannot apply. Appellants argue that section 4019.3 permits but does not require counties to authorize wages not to exceed two dollars for all county inmates for eight hours of work. COB 42; AOB 32. This is "enough on its own to preclude application of the Labor Code to Plaintiff's claims," according to appellants. AOB 27. Appellants' interpretation of this provision and its significance to this case, however, is based on a misapprehension of the text and legislative background of this provision, as well as basic principles of statutory interpretation.

California Penal Code Section 4019.3 provides:

The board of supervisors may provide that each prisoner confined in or committed to a county jail shall be credited with a sum not to exceed two dollars ($2) for each eight hours of work done by him in such county jail. Cal. Pen. Code § 4019.3.

15

      **1.**     **Penal Code section 4019.3 does not preclude application of the California Labor Code to the individuals at issue in this case, because the provision sets forth a permissive, non-exclusive, procedure.**

Appellants correctly interpreted the language of this provision as permissive, that is, as setting forth how the board of supervisors may act, not how it is required to act. AOB 32. *See* Analysis of Senate Bill 1394 (June 10, 1959) (from the Hugo Fisher Papers, 1958-1962, UCLA Library, Department of Special Collections) (clarifying that the adoption of the measure will "permit a County Board of Supervisors to pay a county jail prisoner.") But appellants erroneously conclude that Penal Code § 4019.3 "supersedes" the Labor Code as applied to detainees working in county jails because it specifically addresses county inmate compensation, unlike the Labor Code. AOB 40-41; COB 25.

First, the provision is not and does not claim to be exclusive or to wholly occupy the field of what the board of supervisors may do. Appellants fail to recognize that "[t]hough it is a general rule that a special controls a general statute, without regard to their respective dates, still it is not always or necessarily true that a special law entirely excludes from its field of operations the provisions of a general law, where the two can occupy the same domain without any inherent antagonism." *Cohn v. Isensee*, 45 Cal. App. 531, 536 (Cal. Ct. App. 1920).

For example, in *Anderson v. Sherman*, 125 Cal. App. 3d 228 (Ct. App. 1981), appellants appealed a judgment entered against them in superior court on

the grounds that they were not served properly, because they were served under the general rules of service set forth in the Code of Civil Procedure, rather than more specific provisions of the Vehicle Code, sections 17450 through 17456 and 17462, which govern the means by which out-of-state residents may be served in an auto accident case. The court ruled against the appellants, reasoning that "nowhere do these Vehicle Code sections declare this procedure for service of summons to be the exclusive method of service in the cases to which it applies; nor have defendants cited any case construing it as such" and that the service provisions of the more general statute "have universal application." *Anderson*, 125 Cal. App. 3d at 235–237.

While section 4019.3 specifies what a county board of supervisors may do in regard to compensating detainees, it says nothing at all about what a private company may or must do when it employs detainee labor. But the answer to that question is an obvious one. Aramark must follow all applicable state laws governing employment of workers, including the California Labor Code, and the Penal Code does not provide any mechanism to allow the company to shirk this obligation.

**2. Penal Code section 4019.3 does not preclude application of the California Labor Code to the individuals at issue in this case, because Penal Code 4019.3 does not apply to them.**

Appellants argue that this provision applies to all county jail inmates, regardless of their conviction status. Appellants are incorrect, as they base their view on a blinkered reading of the provision and the statutory scheme to which it belongs. The provision's text and its statutory context make clear that it applies only to county jail inmates working in public works programs.

**i. The text of Penal Code section 4019.3 makes clear that the statute does not apply to private-public work programs.**

Appellants fix their attention on the phrase "each prisoner confined in or committed to a county jail," which they argue indicates that this provision applies to all pre-trial and post-conviction detainees in county jails. AOB 35–37. In their discussion of this part of the statutory text, however, appellants sidestep not only the legislative context of this provision but also the remainder of the provision's text. Most critically, appellants neglect to address the text that provides that the board of supervisors may provide a credit to each prisoner for work done by him "in such county jail." Cal. Pen. Code § 4019.3.

Courts must read a statute to give effect to every word in its text and avoid a reading of statute that renders some words altogether redundant. *See, e.g.*, *Lowe v. S.E.C.,* 472 U.S. 181, 208 (1985) ("[W]e must give effect to every word that

18

Congress used in the statute."); *In re Marquez,* 3 Cal. 2d 625, 629 (1935) ("To ascertain the meaning of statute, phases therein must be construed in connection with associated phrases."); Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 58 (1868) ("[T]he courts must . . . . lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory.").

Here, the phrase "in such county jail" appears after the description of the type of prisoners to whom the provision applies, that is, "each prisoner confined in or committed to a county jail." Because the phrase "confined in or committed to a county jail" modifies "prisoner," the phrase "in such county jail," which comes after it, cannot also serve to signify the state of being detained. Such an interpretation would render the phrase a surplusage. Thus, "in such county jail" must refer to work done for a county jail.

> ii. **The statutory context of Penal Code section 4019.3 makes clear that the statute does not apply to private-public work programs.**

Appellants also err in interpreting this statute as if it exists in a vacuum rather than as part of a body of law, more specifically, as a provision of a chapter of the California Penal Code. Courts generally interpret provisions of the same body of law together. "Statutes cannot be read intelligently if the eye is closed to

considerations evidenced in affiliated statutes. Part of the statute's context is the corpus juris of which it forms a part." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 539 (1947). California Penal Code Part 3, Title 4, Chapter 1, which encompasses this provision, refers only to public works programs. In fact, two provisions that appear just before section 4019.3 explicitly refer to labor on public works. *See* Cal. Penal Code § 4017 and Cal. Penal Code § 4018. Section 4017 authorizes "the board of supervisors or city council" to require "[a]ll persons confined in the county jail . . . under a final judgment of imprisonment rendered in a criminal action or proceeding . . . to perform labor on the public works or ways in the county or city." Cal. Penal Code § 4017. Section 4018 provides that the board of supervisors may prescribe and enforce rules and regulations under which labor on public works or ways may be performed. The board of supervisors making such order may prescribe and enforce the rules and regulations under which such labor is to be performed. Cal. Penal Code § 4018.

Because these statutes together form the same corpus juris, the court should conclude that the labor referred to in section 4019.3 is public works program labor.

   **iii.** **The legislative background of Penal Code section 4019.3 makes clear that statute does not apply to private-public work programs.**

20

The legislative background of section 4019.3 further supports this conclusion. When the legislature passed and enacted section 4019.3 in 1959, it is clear that it did not intend for Penal Code section 4019.3 to apply to detainees working for private entities. Contemporaneous analysis of the bill reflects this intent. "Prisoners assigned to honor farms can now be paid a small wage. The services of men working in the jail kitchens, laundry, or various maintenance assignments are of equal value." *See* Analysis of Senate Bill 1394 (June 10, 1959) (from the Hugo Fisher Papers, 1958-1962, UCLA Library, Department of Special Collections). These work assignments fall within the definition of public works. Cal. Lab. Code § 1720; Cal. Penal Code § 4017 ("'labor on the public works' includes clerical and menial labor in the county jail, industrial farm, camps maintained for the labor of such persons upon the ways in the county, or city jail"). But, as appellants concede, appellees' labor falls outside the scope of "public works" projects. COB 38.

The legal backdrop against which section 4019.3 was enacted also confirms this intent. When the provision was enacted in 1959, the California Constitution prohibited contracting with any private company for the use of state prison or local jail inmate labor. 1990 Cal. Legis. Serv. Prop 139. It was not until 1990, when section five of Article XIV of the California Constitution was repealed by

Proposition 139, that such contracts between private and public entities were authorized by state law. *Id.*

Appellants argue that voters would have amended or repealed section 4019.3 had they intended to make wages mandatory or allow compensation in excess of the two dollar per eight hours in the context of a public-private work program. COB 36; AOB 55. Appellants are, again, incorrect. There is no need to repeal or amend section 4019.3 to reflect that intent, because it already does: its text, statutory context, and the circumstances around its enactment already make clear that it applies only to public works programs and not public-private work programs.

### C. Proposition 139 does not preclude application of the California Labor Code to non-convicted incarcerated individuals performing services in county jails for a for-profit company that sells goods produced by incarcerated individuals to third parties outside of the county.

Proposition 139, enacted in 1990, provides the legal framework that allows state prisons and county jails to contract with private companies for inmate labor. 1990 Cal. Legis. Serv. Prop 139. Appellants argue that the district court erred in finding that Proposition 139 does not preclude wage claims under the Labor Code. Appellants base their argument on a blinkered examination of the text and legislative background of Proposition 139. Appellants also heavily rely on the proposition that voters and lawmakers did not intend to ensure the payment of

wages to pre-trial detainees working in public-private work programs, because they did not enact any legislation with language parallel to that of Penal Code section 4019.3 or language that is otherwise explicit enough for appellants.

> **1. The policies and legislative intent undergirding Proposition 139 would be advanced by the payment of wages to the individuals at issue in this case.**

Appellants accuse the district court of reaching its conclusion by engaging in an incomplete consideration of Proposition 139's purposes and policies. But appellants themselves cherry-pick and present only parts of the law's legislative background, and, moreover, they engage in a narrow interpretation of those cherry-picked materials to advance their arguments.

Appellants argue that the district court wrongly focused on two policies of Proposition 139 and consequently came to an incorrect ruling on the issue on appeal now. Those policies are "(1) compensating state prisoners for their work and (2) ensuring that working inmates do not replace striking, non-incarcerated workers." COB 45. Appellants argue that Proposition 139 "sought primarily to mitigate the costs of incarceration, compensate victims, and provide support for inmates' families during incarceration" and that it "was also designed to expand work opportunities in prisons and jails." COB 47.

Payment of wages under the Labor Code to non-convicted individuals working for private companies would not contravene these interests but advance

23

them. Cal. Penal Code § 2717.8, which is among the provisions of law enacted by Proposition 139, illustrates that such payment would advance the purpose of Proposition 139 to mitigate costs of incarceration and provide support for inmates' families. That provision provides that compensation for state prisoners engaged in private-public work programs shall be comparable to the wages paid to non-inmate employees who perform similar work, subject to deductions that may not exceed 80 percent of gross wages and shall be limited to taxes, reasonable charges for room and board, restitution fine or contributions to funds established by law to compensate crime victims, and allocations for support of family pursuant to state statute, court order, or agreement by the prisoner. Cal. Penal Code § 2717.8.

Appellants assert that this provision "merely shows that the drafters of Proposition 139—who were presumably also aware of the existence of Penal Code section 4019.3—were also well aware of how to enact mandatory compensation schemes for inmates working in public-private work programs, and yet chose not to do so for those confined in or committed to county jails." AOB 51. Appellants overlook two obvious yet critical points.

First, the payment of wages to state prisoners under this provision shows that the legislature contemplated the payment of wages to inmates working for private companies and decided that such payment would be compatible with the law's purposes.

24

Second, the goal of compensating crime victims is not relevant to non-convicted detainees. Non-convicted detainees have not been convicted of crimes, and must be considered innocent until proven guilty. Legally, they are not "criminals," a term often invoked in in Proposition 139's ballot materials. 3-ER-503. For example, the argument in favor of the law in the Proposition 139 ballot pamphlet, signed by then-governor George Deukmejian, asks voters the hypothetical question: "Why should law abiding citizens have to work and pay taxes to support a free ride for convicted criminals[?] It's the criminal who owe a debt to society…NO MORE FREE RIDE FOR FELONS!" *Id.*

The goal of providing support for detainees' families would also be better advanced by paying non-convicted detainees. Detainees' families are not provided with any compensation under the status quo but could receive a portion of their detained family members' wages if detainees are paid under the Labor Code.

It is also clear that paying detained workers prevailing wages would not cut against the policy goal of providing detainees work opportunities. Detainees would not be deprived of work opportunities as a result of receiving payment, and, if anything, inmates' work experiences in these programs would better reflect those of workers in the larger labor market.

Finally, the district court rightly underscored the significance of the fact that the statutes enacted by Proposition 139 reflect the voters' will that detainees should

25

be paid for their labor in private-public work programs. "Proposition 139 makes no mention of pretrial detainees . . . and therefore does not address the circumstances at hand. If anything, the text of Proposition 139—and specifically its requirements that (1) individuals incarcerated in state prisons working for a private company be paid and (2) inmate labor not replace non-incarcerated individuals on strike— supports a finding that voters intended non-convicted individuals incarcerated in county jails working for private companies be paid for their labor," the district court wrote. 1-ER-18–19. Indeed, it undisputed that voters intended that convicted prisoners required to submit to involuntary servitude be paid for their labor for private companies. It follows, then, that if voters intended that this narrow sector of prisoners who can be forced to labor without wages to be paid under Proposition 139, they also supported paying wages to non-convicted detainees, who cannot, consistent with the Thirteenth Amendment, be forced into involuntary servitude.

### 2. The absence of a local ordinance does not foreclose the application of the Labor Code to the individuals at issue.

Appellants argue that Proposition 139 gave local governments the exclusive authority to determine wages for all people incarcerated in county jails. Because Alameda County has not enacted a relevant local ordinance, Appellants argue that non-convicted incarcerated people in Alameda County jails who work for for-profit companies can be forced to work for those companies without the wages prescribed by the Labor Code. The district court correctly rejected this argument.

Proposition 139 neither makes mention of non-convicted detained individuals, nor does it address wages for those individuals who are detained in a jail that is not governed by a local ordinance. As the district court concluded, Proposition 139 therefore does not address the circumstances at hand.

Appellants ask the Court to accept their reasoning that the Labor Code does not apply to non-convicted detainees because it does not expressly mention them. They simultaneously ask the Court to accept the argument that Proposition 139 applies to non-convicted detainees working for private companies in detention, because it does not expressly mention them. Appellants' reasoning for their conclusion that the Labor Code is not applicable here is faulty, because the Labor Code is concerned with workers, among whom are non-incarcerated detainees working for private companies. But that strain of logic employed by appellants can be properly applied here, and appellants cannot challenge the conclusion it yields without contradicting themselves.

## CONCLUSION

For the foregoing reasons, the ruling of the district court should be affirmed.

Date: May 11, 2022

Dan Siegel, Siegel, Yee, Brunner & Mehta

*/s/ Dan Siegel*
Dan Siegel

27

*Attorneys for Appellants Armida Ruelas, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** __21-16528_____

The undersigned attorney or self-represented party states the following:

[ X ]   I am unaware of any related cases currently pending in this court.


**Signature** ___/s/ Dan Siegel_____ **Date** ___May, 11, 2022_
*(use "*s/[typed name]*" to sign electronically filed documents)*

.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____21-16528_____

I am the attorney or self-represented party.

**This brief contains _6,342__ words,** excluding the items exempted by Fed.

R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [x] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint
brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___/s/ Dan Siegel_____ **Date** __May 11, 2022_____
*(use "s/[typed name]" to sign electronically filed documents)*